21 N.J. Super. 117 (1952)
91 A.2d 1
IN THE MATTER OF THE ESTATE OF JOHN W. STONE, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided August 5, 1952.
*119 Mr. Jay B. Tomlinson, attorney for plaintiffs.
Mr. Albert B. Kahn, guardian ad litem for four infant parties in interest and attorney for adult beneficiaries.
Mr. Charles Quinn, guardian ad litem for one infant party in interest and attorney for one adult beneficiary.
EWART, J.S.C.
John W. Stone died July 24, 1944 in his 81st year, a resident of Trenton, N.J., leaving him surviving his widow, Emma J. Stone; seven children, viz: Susanna Robbins, Berdie Weeks, Marie Beck, John W. Stone, Jr., Lee J. Stone, Benjamin F. Stone, and Emma J. Stockton; *120 and a grandson, John W. Stone, son of the testator's deceased son, Gilbert S. Stone. Also additional grandchildren hereinafter mentioned whose parents are still living.
His will bearing date February 19, 1944 was duly probated in the Prerogative Court and letters testamentary thereon were issued August 4, 1944 to Emma J. Stockton and Benjamin F. Stone, two of the testator's children, as executors.
By his will the testator directs payment of his debts and funeral expenses, bequeaths the sum of $8,000 to his widow, and bequeaths and devises all of the rest, residue and remainder of his estate, real and personal, to four of his children in trust as set forth in the following portions of his will:
"THIRD: All the rest, residue and remainder of my estate, of whatsoever the same may consist and wheresoever situate, including all property over which I may have a general power of appointment at the time of my death, I give, devise and bequeath to my daughters, Mrs. Marie Beck and Mrs. Emma J. Stockton, and my sons, Benjamin F. Stone and Lee J. Stone, as Trustees, to have and to hold upon the following terms, conditions and trusts, that is to say:
(A) From and after one year from the date of my death to pay the net income from my estate to my wife, Emma J. Stone, for and during the term of her natural life, provided however, that if the net income exceeds the sum of Eight Thousand ($8,000.00) Dollars in any one year, then in that year to pay only the sum of eight thousand ($8,000.00) dollars to her from such income, and to add any excess of such income to the principal of my estate.
(B) From and after the death of my wife, Emma J. Stone, to pay the sum of Three Hundred ($300.00) Dollars annually to my sister, Kate Stone, for and during the term of her natural life.
(C) From and after the death of my wife, Emma J. Stone, to pay all the balance of the net income from my estate in equal shares to my children Susanna Robbins, Berdie Weeks, Marie Beck, John W. Stone, Jr., Lee J. Stone, Benjamin F. Stone, Emma J. Stockton and my grandson, John W. Stone, son of my deceased son, Gilbert S. Stone, for and during their respective lives.
(D) Upon the death of any of my said children or of my grandson, the said John W. Stone, I direct that their respective shares from which they have been receiving the income, or in the event that any of them shall predecease my wife, Emma J. Stone or myself, then the parent's share, shall be paid to his or her issue per stirpes and not per capita. I direct that my trustees and any successors thereto shall continue to hold the share of any principal of my estate that might fall due to any of my grandchildren until he or *121 she shall attain the age of thirty years. The income from such share however shall be paid to such child in the meantime and this provision as to the payment of income and principal shall apply to my grandson, John W. Stone, the son of my deceased son, Gilbert S. Stone. Should any of my children or my said grandson, John W. Stone, die without leaving issue, I then direct that my trustees distribute the share to which such child or grandchild is entitled equally among my surviving children and my said grandson and the children of any deceased child who shall take in equal portions the share which their parent would have taken if living."
The executors have filed three accountings, all duly approved by the court. The third and last accounting covers a period from November 1, 1948 to December 31, 1951 and was approved and allowed by this court on June 6, 1952. And a supplemental accounting covering the period from January 1, 1952 to June 10, 1952 was approved and allowed by this court on June 27, 1952.
The executors' third accounting showed on hand a balance of assets, including principal and interest, of the total value for accounting purposes of $648,752.57; gross income collected during the period covered by the third accounting of $257,114.33; increases realized on sale or redemption of securities and profits on sales of real estate aggregating $61,176.94; and the supplemental accounting covering the period from January 1, 1952 to June 10, 1952 showed additional items of gross income collected aggregating the further sum of $34,538.66 and further profits on sale or redemption of securities and items of real estate aggregating $11,405.13.
The complaint annexed to the third and final account of the executors, in addition to asking the approval of the account and the allowance of executors' commissions and attorney's fees, seeks further relief under the following allegations.
"The plaintiffs further allege that:
(1) The last Will and Testament of John W. Stone, dated February 19, 1944 provided among other things in Paragraph 3 (C)
`From and after the death of my wife, Emma J. Stone, to pay all the balance of the net income from my estate in equal shares to my children Susanna Robbins, Berdie Weeks, Marie Beck, John W. *122 Stone, Jr., Lee J. Stone, Benjamin F. Stone, Emma J. Stockton and my grandson, John W. Stone, son of my deceased son, Gilbert S. Stone, for and during their respective lives.'
(2) The said Emma J. Stone, widow of John W. Stone, is still living and she has stated to the plaintiffs that it is her desire to accelerate the trust by releasing her interest in the said estate upon receiving assurances from the individual legatees of proper compensation. However, inasmuch as the said will provides by Paragraph 3 (D) as follows:
`Upon the death of any of my said children or of my grrandson, the said John W. Stone, I direct that their respective shares from which they have been receiving the income, or in the event that any of them shall predecease my wife, Emma J. Stone, or myself, then the parent's share shall be paid to his or her issue per stirpes and not per capita. I direct that my trustees and any successors thereto shall continue to hold the share of any principal of my estate that might fall due to any of my grandchildren until he or she shall attain the age of thirty years. The income from such share however shall be paid to such child in the meantime and this provision as to the payment of income and principal shall apply to my grandson, John W. Stone, the son of my deceased son, Gilbert S. Stone. Should any of my children or my said grandson, John W. Stone, die without leaving issue, I then direct that my trustees distribute the share to which such child or grandchild is entitled equally among my surviving children and my said grandson and the children of any deceased child who shall take in equal portions the share which their parent would have taken if living;' and
Since it is unknown at the present time who the ultimate beneficiaries of the said estate may be, Emma J. Stone would be placed in peril should she execute a release and should the Court decide that because of said provision in the last Will and Testament of John W. Stone acceleration of payments could not be made by the executors and trustees appointed in the said will.
No action is pending in any Court involving the matters aforesaid.
Wherefore plaintiffs pray that this Court may construe the terms of the said will and declare whether or not the trust could be accelerated upon the giving of a release by the said Emma J. Stone."
By a judgment entered June 27, 1952 the supplemental accounting of the executors was allowed and approved; commissions on income and corpus were allowed the executors; a counsel fee of $10,000 was allowed Mr. Tomlinson as attorney for the executors; a fee of $1,250 was allowed Albert B. Kahn, Esquire, guardian ad litem for infant parties in interest; a fee of $1,250 was allowed Charles Quinn, Esquire, as guardian ad litem for an infant party in interest; *123 and the executors were ordered to pay over the balance of the estate in their hands to the four trustees named in the will, who had qualified as such and to whom letters of trusteeship were issued April 25, 1952, said judgment of distribution to the trustees being in accordance with a petition therefor annexed to the supplemental accounting above referred to.
At that time the court reserved decision on the following questions, viz: (1) the application set forth in the complaint annexed to the third and final account for a declaratory judgment respecting the proposal to have the widow of testator release her right to income for life under testator's will and to accelerate the payment of income to testator's children, and (2) the application of Mr. Kahn for a counsel fee of $3,250 to be paid by the estate and the application of Mr. Quinn for a counsel fee of $6,500 to be paid by the estate. Both Mr. Kahn as guardian ad litem for four infant parties in interest and Mr. Quinn as guardian ad litem for one infant party in interest filed reports in writing with the court on or prior to June 6, 1952, on which date the third and final accounting was approved and allowed, and both filed supplemental reports as guardians ad litem in connection with the supplemental accounting covering the period from January 1, 1952 to June 10, 1952, which supplemental account was approved and allowed June 27, 1952. Mr. Kahn files an affidavit of services rendered by him covering not only his services as guardian ad litem for four infant parties in interest in connection with the third and final account of the executors, but also covering services rendered by him from the date of the second account on November 1, 1948 to the date of the third account on December 31, 1951 in connection with his employment by most of the individual life beneficiaries under the will; and Mr. Quinn files a similar affidavit covering not only his services as guardian ad litem for one infant party in interest, but also covering services to one adult beneficiary under the will from the date of the second accounting to the date of the third accounting. These *124 affidavits reveal that both Mr. Kahn and Mr. Quinn seek the allowance of counsel fees to them, to be paid by the estate, for services rendered by them as attorneys for individual beneficiaries over and above and in addition to the services rendered by them as guardians ad litem for infant parties in interest.
Proofs taken on June 27, 1952 disclosed that testator's widow, Emma J. Stone, will be 85 years of age on September 26, 1952; that she is in excellent health considering her age; that she is in full possession of her mental faculties, signs her own checks, reads the daily papers, watches television, and is able to get about, and that she possesses an independent estate of her own of an estimated value of $125,000 to $130,000. The testimony of her son, Benjamin F. Stone, one of the plaintiffs, was that his mother would like the payment of income to testator's children to be accelerated notwithstanding the provisions of testator's will.
Testimony of Charles A. Schaefer, accountant employed by the estate, shows that for the year 1951 the estate had a net taxable income, after payment of $8,000 to testator's widow, of $55,700.13 with a resulting income tax of $27,538.03, and a taxable income in the year 1950, after payment of $8,000 to testator's widow, of $44,752.04 with a resulting income tax of $19,341.94.
The proofs indicated that some of the testator's children are in rather poor financial circumstances.
The accountant testified, and the court may take judicial notice under the provisions of the federal income tax statutes, that a very large saving of aggregate income taxes would result were the trust accelerated so as to pay out all or substantially all of the net income to the testator's widow and children, for the reason that dividing the total excess net income into eight parts and payment of same to eight life beneficiaries would result in tax being assessed in much lower brackets than the taxable bracket reached by the accumulation of income by the estate.
*125 First, as to acceleration of the trust so as to permit the immediate payment of income in excess of $8,000 per year to be paid to the testator's children and to his grandson, John W. Stone:
The proofs disclosed that such excess income, above the $8,000 per annum to the testator's widow, amounted to $55,700.13 in the calendar year 1951 and to the sum of $44,752.04 in the year 1950, with a resulting federal income tax assessed against the estate of $27,538.03 for the year 1951 and $19,341.94 for the year 1950. No doubt a great savings of income tax could be effected were this excess income distributed annually among the testator's seven living children and his grandson, John W. Stone. In addition thereto, it has been represented to the court that some of testator's children are in poor financial circumstances and that one or more of them has reached an age in excess of 60 years. Inasmuch as the testator's will manifests a general purpose of providing an income for his widow during her lifetime and an income for his children after the widow's death, with the corpus or principal of the trust to go ultimately to his grandchildren, counsel for the testator's children and for his grandson, John W. Stone, urged that the trust should be accelerated, with the consent of the widow, to the extent of permitting excess income to be paid immediately to the testator's children and his grandson, John W. Stone, and urged further that such acceleration would not do violence to the general intent of the testator.
I have concluded that the relief prayed will have to be denied for the reason that this matter is not properly before the court for determination. No process has been issued or served upon the parties in interest other than the notice of settlement published and mailed to the parties which gave notice of the plaintiffs' application to have their third and final account approved and allowed; notice of the application for commissions to the executors; notice of application for a counsel fee to Mr. Tomlinson, attorney for the executors; notice of application for an order or judgment of distribution *126 to the testamentary trustees; and notice of an application "for a declaratory judgment with respect to accelerating the trust of Emma J. Stone." No notice was given to unborn grandchildren of the testator who may become parties in interest. Guardians ad litem were appointed for the infant parties in interest and the guardians filed their respective reports as to the propriety of the accounting of the executors, but no answer to the request for acceleration of the trust has been filed by the widow, nor by any of the adult beneficiaries under the will, nor by the guardians ad litem of the infant parties in being, nor has a guardian been appointed or an answer filed for grandchildren of the testator who may be born hereafter prior to the termination of the trust. Indeed, the notice does not require the filing of answers. Furthermore, the notice published and mailed makes reference "to accelerating the trust of Emma J. Stone." The real purpose, however, appears to be to accelerate the trust in so far as concerns payment of income to the testator's children, and to his one grandchild, John W. Stone, prior to the death of testator's widow, and no reference to the acceleration of that phase of the trust is made in the notice given.
Under these circumstances, I do not consider the parties are properly in court on the question of accelerating the trust, and the judgment of the court would not be binding upon the parties in interest. For that reason, the application relating to acceleration of the trust is denied.
While the foregoing remarks dispose of the question of acceleration of the trust in the present proceedings, it may nevertheless be pertinent to comment upon the following aspects of this application to accelerate the testamentary trust:
(1) The plaintiffs seek a declaratory judgment upon a supposititious set of circumstances not true in fact. The life estate of the widow of the testator has not been released or discharged but still persists. This court cannot properly be called upon to render a declaratory judgment, which *127 would amount merely to an advisory opinion, upon some state of facts which may arise in the future but does not exist at this time. Whether testator's widow will in fact and in law release and discharge the trustees from their obligation to pay her a life income of $8,000 under the terms of the will remains to be seen. She has not done so up to the present time.
(2) The provisions of the Declaratory Judgment Act (N.J.S. 2A:16-50 et seq.) are not ordinarily invocable where another adequate remedy is at hand. The act supplements and is not a substitute for existing remedies, and whether relief should be afforded under its terms ordinarily rests in sound judicial discretion. Empire Trust Co. v. Board of Commerce, etc., 124 N.J.L. 406, at 411 (Sup. Ct. 1940); Dover Boiler Works v. New Jersey Manufacturers Casualty Insurance Co., 18 N.J. Misc. R. 573 (Circ. Ct. 1940).
There is an adequate remedy available to the trustees, or to testator's children, in the form of a plenary suit in the Chancery Division in which all of the parties in interest, including unborn grandchildren of testator, should be joined either as parties plaintiff or defendant, with appropriate allegations of fact and demand for the relief sought.
(3) The complaint to which the third and final account of the executors is annexed discloses that the antecedent life estate of the testator's widow has not been released, discharged or destroyed. The prior termination of the life estate is a condition precedent to a judgment permitting acceleration of the trust and the immediate payment to the remaindermen. Simpkins v. Simpkins, 131 N.J. Eq. 227, at 230 (Ch. 1942). See also Anthony v. Camden Safe Deposit and Trust Co., 106 N.J. Eq. 41 (Ch. 1930); Bennett v. Fidelity Union Trust Co., 123 N.J. Eq. 198 (Ch. 1938).
In Hackensack Trust Co. v. Barkerding, 9 N.J. Super. 595 (Ch. Div. 1950), Judge Grimshaw dismissed a suit which sought acceleration of a trust because there had been no absolute and unconditional release of a prior life estate *128 and there was therefore no valid basis for a judgment accelerating the trust and directing immediate distribution.
(4) Acceleration of a trust is never permitted where to do so would violate the manifest intention of the testator or settlor. Anthony v. Camden Safe Deposit and Trust Co., 106 N.J. Eq. 41, at 42 (Ch. 1930); Walter v. Thielke, 127 N.J. Eq. 402 (Ch. 1940); Simpkins v. Simpkins, 131 N.J. Eq. 227 (Ch. 1942); Provident Trust Company v. Osborne, 133 N.J. Eq. 518 (Ch. 1943); Lawrence v. Westfield Trust Co., 1 N.J. Super. 423 (Ch. Div. 1948); Mesce v. Gradone, 1 N.J. 159, at 165 (1948); Hackensack Trust Co. v. Barkerding, 9 N.J. Super. 595, at 602 (Ch. Div. 1950); Ajax Electrothermic Corp. v. First National Bank of Princeton, 7 N.J. 82 (1951).
In Mesce v. Gradone, supra, Chief Justice Vanderbilt said:
"In this State, it is the intention of the settlor of the trust that governs and not the desires of the beneficiaries." (Page 175)
In the case sub judice, the testator's will manifests a plain intention that, during the lifetime of his widow, the principal or corpus of the trust is to be enhanced and increased by the accumulation of income in excess of $8,000 per annum. Such excess annual income amounts to substantial sums of money and will go ultimately, by the terms of the will, to the testator's grandchildren, the ultimate residuary legatees. To halt at this time the accumulation of such excess annual income in the corpus or principal account by paying it annually to the testator's children would deprive the testator's grandchildren of a portion of the corpus or principal of the trust to which they will ultimately become entitled to have paid to them. Such course would plainly violate the express terms of the testator's will and his manifest intention as expressed in his will.
Second, as to the application for counsel fees to be paid out of the estate to Albert B. Kahn, Esquire, and to Charles Quinn, Esquire:
*129 Albert B. Kahn, Esquire, appears in this proceeding as attorney for testator's widow and all of his children excepting only John W. Stone, Jr., including Benjamin F. Stone and Emma J. Stockton in their individual capacities as distinguished from their capacity as executors. Charles Quinn, Esquire, appears as attorney for John W. Stone, Jr. And as above stated, Jay B. Tomlinson, Esquire, appears as attorney for the executors in this cause and has been their attorney since the death of the testator.
Mr. Kahn files an affidavit of services which reveals generally that, in addition to services rendered by him as guardian ad litem for four infant parties in interest, for which he has already been compensated, he spent considerable time after the allowance of the second accounting in research to determine whether or not counsel fees allowed on the second accounting could be deducted from taxable net income and thus reduce the income tax liability of the estate; that in this connection he spent much time in communication with the various beneficiaries under the will, for most of whom he is attorney, and in conferences, with the result that he was able to convince the accountant for the estate that such fees were properly deductible from taxable net income; that he spent considerable time in receiving telephone calls and in conferences with various beneficiaries due to problems arising in connection with the management of the estate in an effort to avoid difficulties which had theretofore existed between the parties because of diversities of opinions, and in connection with the sale, purchase and exchange of stocks, bonds and other securities and the collection of dividends and interest. Also involving problems connected with the management of numerous parcels of real estate owned by the estate, including repairs to properties, leasing and sale of properties, and that in order to avoid disputes between the beneficiaries and the executors he suggested and the parties in interest adopted a practice of holding monthly meetings at which the various problems which arose in connection with the administration of the estate were discussed and an attempt made to settle *130 the same, and that in that connection, Mr. Kahn prepared a written agreement between the parties; that a question arose as to whether or not the executors had authority to enter into an agreement to erect a building to be rented to the U.S. Government as a post office and that after much research it was resolved that the executors did not possess such authority under the terms of the will; that he devoted much time and research to the question of whether, under the testator's will, the income payable to testator's children could be accelerated without awaiting the death of the testator's widow and thereby not only benefit the individual children but also effect a substantial savings in income tax.
In addition to the foregoing, Mr. Kahn filed a brief in support of the application set forth in the complaint to which the third and final account of the executors was annexed, that the testamentary trust set up under the testator's will should be accelerated so as to permit the immediate payment to testator's children of income to which they would become entitled by the terms of the will, upon the death of their mother, the testator's widow.
As mentioned above, the court has already allowed Jay B. Tomlinson, Esquire, attorney for the executors, a fee for the services rendered by him for the period covered by the third and final account of the executors. No contest has arisen between any of the parties in connection with the allowance of the executors' third and final account, or the order for distribution to the testamentary trustees, or indeed respecting the proposal that the trust be accelerated. The executors in their complaint seek a declaratory judgment as to whether or not such acceleration might be permitted. Mr. Kahn has filed a brief in support of the application. Neither the attorney for the executors nor Mr. Charles Quinn, attorney for John W. Stone, Jr., one of testator's children, has filed a brief either in support or in opposition to the application.
While there is a fund in court out of which an allowance might be made to counsel in the discretion of the court in a proper case (Rule 3:54-7 (b)), in this case I feel that *131 Mr. Kahn's services were rendered primarily to and for the benefit of the individuals whom he represents and not to the estate whose executors are represented by Mr. Tomlinson and that, therefore, Mr. Kahn should look to his individual clients for compensation for his services and not to the estate itself.
Mr. Charles Quinn as attorney for John W. Stone, Jr., one of testator's children, files an affidavit of services showing that from the time of the approval of the executors' second account he has rendered services including participation in the preparation of an agreement entered into May 2, 1949 between the parties in interest in the estate calling for monthly meetings at which problems would be discussed, etc.; that at these monthly meetings business of the estate was discussed; minutes were kept; a copy of the minutes was forwarded to Mr. Quinn's individual client, John W. Stone, Jr., which were turned over to Mr. Quinn for examination; that during the past three years he spent many hours in the examination of these reports and the problems raised thereby; that he spent many hours in conferences with Albert B. Kahn, Esquire, attorney for the other individual beneficiaries and with Jay B. Tomlinson, Esquire, attorney for the estate; and that he held many conferences with Mr. Tomlinson, attorney for the executors, and Mr. Kahn, attorney for individual beneficiaries, on the question of acceleration of the trust set up by testator's will so as to permit the immediate payment of income to testator's children without awaiting the death of testator's widow. Mr. Quinn's affidavit also covers services rendered by him as guardian ad litem for one of the infant parties in interest, but he has already been compensated for such services as guardian ad litem as above set forth.
The same remarks regarding the application of Mr. Kahn for a counsel fee to be paid by the estate for services rendered by him apply to the application of Mr. Quinn. I feel that his services were rendered primarily to and for the benefit of his individual client, John W. Stone, Jr., and that he should *132 look to his own client, rather than to the estate itself, for compensation for his services.
Where the executors are represented in the settlement and administration of an estate by an attorney for whose services an allowance is made payable from the estate, and in the absence of any contest or litigation encountered in the administration of the estate, I know of no practice sanctioned by statute, the rules, or adjudications of the courts, which would permit the estate to be charged for services rendered by attorneys for individual legatees or beneficiaries under the testator's will, even though such services might incidentally benefit the estate by resolving problems, which if not settled, might involve some future litigation. In such case, were individual beneficiaries permitted to employ counsel to represent them with the expectation that such counsel would be paid for services out of the estate itself, the cost of settling an estate would be tremendously increased without justifiable cause.
Accordingly, the applications of both Albert B. Kahn, Esquire, and of Charles Quinn, Esquire, for counsel fees to be paid from the estate are denied for the reasons aforesaid.