81 So.2d 590

**BIRMINGHAM TRUST NAT'L BANK**

v.

**Ethel Mae GARTH et al.**

**8 Div. 789.**

Supreme Court of Alabama.

June 30, 1955.

Smyer, Smyer, White & Hawkins, Birmingham, and Woodroof & Woodroof, Athens, for appellant.

122

Maurice F. Bishop and Robt. S. Richard, Birmingham, and D. U. Patton, Athens, for appellees.

MERRILL, Justice.

This is an appeal from a decree of the Circuit Court of Limestone County, in Equity, overruling demurrer to the bill of complaint as amended, to terminate a trust. The complainants (appellees) are Ethel Mae Garth, the daughter of the testator, and the six children of Ethel Mae Garth. The respondent-appellant bank is the trustee under the will of the testator.

To use the language in appellees' brief, "The bill seeks to terminate the trust created under the will, and a declaration of rights of the parties thereunder." The testator, L. C. Hightower, died on June 2, 1934, and the will was admitted for probate in Limestone County on June 28, 1934. The administration of the trust estate was transferred to and is pending in the circuit court, in equity.

The verified bill, with the will attached as an exhibit, shows that all the complainants are over 21 years of age except the youngest child of Ethel Mae Garth, who is over 18 and has had her disabilities of nonage removed and would become 21 on December 13, 1954; that the widow of L. C. Hightower, deceased, is dead; that a specific legacy to a sister of the testator was terminated by her death; that a specific legacy of $25 per month to a niece was terminated by her renunciation and release of same; that the only reason for the existence of the trust is a provision in the will providing for the payment of $500 per month to his daughter, Ethel Mae Garth, during her life; that Ethel Mae Garth is willing to renounce her interest in the estate; that complainants have requested respondent to terminate the trust and divide the corpus as provided in the will and respondent refuses so to do.

The respondent filed a demurrer consisting of 101 grounds which was overruled.

Item 3(f) of the will provided in pertinent part:

"Upon the death of my said daughter, Ethel Mae Garth and upon the arrival of her youngest child at the age of twenty-one years it is my will and desire that my said trustee shall distribute all the rest and residue of my estate to the children of my daughter, Ethel Mae Garth, who shall then survive her or to the descendants of any of her said children who may not then be living, share and share alike, per stirpes."

This case would present some close and interesting questions if we reached them, but under the allegations of the bill, which are construed more strongly against the pleader, we do not reach the real questions which are capably argued by counsel for the parties.

The theory of complainants' bill is that the renunciation by Ethel Mae Garth of all her life interests in a part of the income from the trust, accelerates the trust, so that it can be terminated immediately with the same result as if she had died.

This theory was also followed by the trial court as his opinion states: "The purpose of the trust will have been fulfilled in December, 1954 with the renunciation of Ethel Mae Garth and her youngest child becoming twenty-one years of age."

Complainants have no existing justiciable controversy with respondent unless there has been a renunciation by Ethel Mae Garth. Appellees in brief make the categorical statement, " * * * and Ethel Mae Garth has renounced her interest in the trust and requested a termination of the trust estate." The statement quoted from the opinion of the trial court in the preceding paragraph shows that he, too, treated the cause as if there had been a renunciation by Ethel Mae Garth. The reply brief of appellant is just as emphatic when it states, "Mrs. Garth has not renounced her life estate." But has such a renunciation been alleged in the bill? It appears that there has been a deliberate and studied effort not to so allege. Paragraph 9 of the original bill stated in part:

"9. As a further alternative, complainants aver that Ethel Mae Garth is willing to renounce all of her interest in and to said trust estate and all income therefrom contingent upon a distribution of said trust estate as provided in the Last Will and Testament of L. C. Hightower, deceased."

One of the several grounds of demurrer to the original bill was: "It affirmatively appears from the Bill of Complaint that Ethel Mae Garth, a life tenant under the trust, has not relinquished her rights under the trust."

Subsequently, the bill was amended by amending paragraph 9 to read as follows:

"9. As a further alternative, complainants aver that Ethel Mae Garth is willing to renounce all her interest in and to said trust estate and all income therefrom and to execute all proper instruments to effect such renunciation and release in order to terminate said trust contingent upon a distribution of said trust estate as provided in the Last Will and Testament of L. C.

Hightower, Deceased. Complainants aver that upon such renunciation by the said Ethel Mae Garth that the remaining complainants constitute and are the sole parties in interest and beneficiaries and that there are no other interested parties, contingent or otherwise, and that said trust estate should be terminated and distributed as provided in the Last Will and Testament of L. C. Hightower, Deceased. Complainants aver that it is manifest from said Last Will and Testament of L. C. Hightower, Deceased, that it was the intention of the testator that the children of Ethel Mae Garth should take upon the occurrence of any event which removes the prior estate of the said Ethel Mae Garth and complainants aver that the renunciation and release of the said Ethel Mae Garth effectively removes and expunges her prior life interest in a part of the income of said estate and that the remaining complainants are entitled to have the estate distributed to them. And complainants aver that the renunciation and release of the interest of Ethel Mae Garth in and to said estate and a part of the income therefrom accelerates the time for the distribution of said estate and eliminates the interest, if any, of any alternative substitutionary remaindermen. Complainants aver that the children of Ethel Mae Garth have established a trust for her under which she will be paid and receive the sum of $500.00 per month for the balance of her life upon the distribution of the corpus of the trust to them and that the purposes of said will, insofar as the complainant Ethel Mae Garth is concerned, therefore, have been fully and effectively accomplished."

The same grounds of demurrer were reassigned to the bill as amended together with many others, three of which again pointed out that a renunciation by Ethel Mae Garth had not been alleged.

We quote from several of our cases which deal generally with the requirements of equity pleading.

" 'Bills in chancery must set forth, not the evidence, but every material averment of fact necessary to complainant's right of recovery. So complete must be the averments of fact, that on demurrer, or decree pro confesso, the court can, without evidence, be able to perceive and affirm that complainant is entitled to the relief prayed. Relief can only be granted on allegations and proof; and the latter will never be allowed to supply omissions or defects in the former. * * * ' " Stone, J., in McDonald v. Mobile Life Ins. Co., 56 Ala. 468, and followed in Brue v. Vaughn, 241 Ala. 322, 2 So.2d 396, 397.

"Material averments in a bill should be made directly and positively, and not left to be deduced by inference from other averments. Pinkston v. Boykin, 130 Ala. 483, 30 So. 398." Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160, 164.

"In speaking of equity pleading in general this court has stated 'that a bill in equity must show with accuracy and clearness all matters essential to plaintiff's right to relief. These matters must not be made to depend upon inference, nor will ambiguous averments of them be accepted as sufficient.' * * *." Gwin v. George, 252 Ala. 318, 319, 40 So.2d 861, 862.

In Collins v. Thompson, 259 Ala. 82, 65 So.2d 491, 493, we said:

" * * * '* * * a bill in equity must set forth, not the evidence, but every material averment of fact necessary to complainant's right of recovery. So complete must be the averment of facts that on demurrer or decree pro confesso, the court can, without evidence, be able to perceive and affirm that complainant is entitled to the relief prayed. McDonald v. Mobile Life Ins. Co., 56 Ala. 468.' The bill under consideration falls short of the standard quoted."

We must agree with appellant that the bill as amended does not meet the requirements stated in these cases as to the direct and positive allegation of the renunciation of her interests by Ethel Mae Garth. Also "the bill must clearly show the title and interest of the complainant in the subject-matter of the suit and a present right to sue," Hicks v. Biddle, 218 Ala. 2, 117 So. 688, 690. A clear allegation of Mrs. Garth's renunciation is required to give complainants a "present right to sue" in this proceeding to terminate the trust.

In the case of Collins v. Thompson, supra, we said: "Here the allegations show complainants to be 'ready, willing, able and eager' to pay their debt, but upon their own terms." The allegations of the bill in the instant case seem to say that Ethel Mae Garth is willing to renounce if we should hold that such action would permit the termination of the trust immediately, and if we should so hold, then her children will pay her $500 per month when the estate is distributed to them. The allegations of the bill as amended in respect to the present renunciation present only a moot case " 'which seeks to determine an abstract question, which does not rest upon existing facts or rights.' " Postal Telegraph-Cable Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428, 429.

A similar situation was considered in Bennett v. Fidelity Union Trust Co., 122 N.J.Eq. 455, 194 A. 449, 451, where the court said:

"In December, 1936, immediately prior to the filing of the bill herein, the widow and each of the two sons executed an agreement whereby the wife 'renounces and releases' her life estates in the three trusts and agrees that upon the request of the trustee 'she will make, execute and deliver proper instruments to effectuate such renunciation and release'; the two sons agree to institute suit in chancery to procure 'an acceleration and termination and distribution of said several trusts between them in equal shares' and further agree that 'upon the termination and distribution of the said trusts, they will support and maintain the (widow) during her natural

life, to the extent of at least $3,000. per year,' and will give such security for such support 'as the court shall direct.' The agreement is to be void 'if the court shall decline to accelerate and terminate all of said trusts.'

"The sons thereupon filed this bill, and ask decree accelerating said trusts and directing an immediate distribution of the principal between the complainants in equal shares 'in accordance with the terms of the said will and codicil.'

\* \* \* \* \* \*

"In the instant case the release is not expressly made to the remaindermen. Is there a release to the trustee; and if so, what is the result thereof?

"The instrument does not express a release to the trustee. It says that the life tenant 'hereby releases' but does not say to whom; the trustee is not a party to the instrument in fact, and is not even named as a party. The language of the agreement is (italics supplied) that 'the said parties (i. e. the remaindermen and the life tenant) have agreed *to and with each other,* as follows: The (life tenant) hereby renounces and releases her life estates in the said several trusts.' It would seem from all this that the true interpretation of the instrument must be that, in so far as it is a release, it is a release to the remaindermen. \* \* \*

"In any event it seems clear that the instrument is not a valid and effectual release to the trustee, and that it was not even intended as such, and this for two reasons.

"In the first place, as already pointed out, the instrument is an agreement between the life tenant and the remaindermen, without the trustee being even named as releasee or as a party thereto, and the instrument further goes on to provide that the life tenant *will execute and deliver,* in the future, at the request of the trustee, 'proper instruments to effectuate such renun-

ciation (surrender) and release.' The *implication is of course that the life* tenant considers that she *has not as yet,* by the agreement in question, effectuated such surrender and release.

"In the second place, the agreement further provides that the whole agreement shall be void if the court shall decline to accelerate and terminate all of the trusts. Even if the agreement should in all respects otherwise be considered a valid and effectual release, it is clear that this provision prevents it from being an absolute and immediately effective release, it is a release valid and operative only conditionally, i. e., on condition that this court decree an acceleration and termination of all the trusts. Certainly this court cannot say that there *has occurred an effective termination* of the life estate, upon the basis of a release which is not absolute and immediately effective, but is expressly conditional upon the happening of an event which has not happened and is not even certain to happen. It may be argued that the release in terms is presently effective and subject only to a condition subsequent which may not happen. It is not perceived that this is material; the essential thing is that there has been no absolute and unconditional release.

"In the view of this court, the agreement here sub judice does not constitute nor effectuate an unconditional termination of the widow's life estates, and hence does not (assuming, but not deciding, that otherwise it would do so), afford a valid basis for a decree that the period of distribution has arrived and that complainants are entitled presently to receive the corpus."

See also In re Stone's Estate, 21 N.J.Super. 117, 91 A.2d 1.

■ We cite statements from a few of our cases dealing with the declaratory judgment feature of the instant case. "The courts will not render purely advisory opinions nor decide moot cases under the guise

of declaratory judgments." Donoghue v. Bunkley, 247 Ala. 423, 25 So.2d 61, 68. "Courts of equity have no authority to give such (advisory) opinions." Bates v. Baumhauer, 239 Ala. 255, 194 So. 520, 523. "The declaratory judgment statutes do not empower courts to decide moot questions, abstract propositions, or to give advisory opinions, however convenient it might be to have the questions decided for the government of future cases." Shadix v. City of Birmingham, 251 Ala. 610, 38 So.2d 851, 852.

It follows that there is no equity in the bill as amended, one of the grounds of demurrer, and the facts alleged show no bona fide existing justiciable controversy. Shadix v. City of Birmingham, supra; Werneth v. Hanly, 262 Ala. 219, 78 So.2d 299.

We have considered the primary questions, that of the allegations affecting the termination of the trust and the declaratory judgment feature, but there remain certain other aspects of the bill as treated by the parties and the court below. These are that the trust is void as one for accumulation only; that the trust should be terminated because of changed circumstances and all the beneficiaries are in economic need; and that the trust violates the law against perpetuities.

Although the trial court overruled the demurrer "to the bill as a whole and to each and every aspect of the bill to which it is addressed," he makes the following statement in his opinion:

"The court is of the opinion that the ground to the effect that the trust is void as one for accumulation only after renunciation of Ethel Mae Garth under Sec. 146, Title 47 of the code, and the ground seeking to terminate the trust, because of changed conditions are not sufficient in this case to terminate this trust under the allegations set forth."

We are in accord with this statement, which is dispositive of those two aspects of the bill.

 The aspect of the bill seeking to terminate the trust because it violates the law against perpetuities, Title 47, § 16, Code of 1940, evidently was not urged in the court below, and was expressly abandoned in oral argument here. However, since we are dealing with the allegations of the bill, we consider it proper to state that the will is an exhibit to the bill and it shows on its face that the trust provision does not violate the rule against perpetuities. Ramage v. First Farmers & Merchants Nat. Bank, 249 Ala. 240, 30 So.2d 706; Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835.

It is not intended that anything said or any case cited in this opinion should indicate, directly or indirectly, our views as to the questions in this matter if and when there is an absolute and unconditional release and renunciation by Ethel Mae Garth.

The decree of the lower court is reversed, one is here rendered sustaining the demurrer to the bill; the cause is remanded and complainants are allowed twenty days to amend, as they may deem proper.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.