145 So.2d 435

Fred H. WHITE

v.

Bettye FRINK, Secretary of State, and John A. Sankey, Judge of Probate.

3 Div. 23.

Supreme Court of Alabama.

Oct. 1, 1962.

**50**

Jack Crenshaw, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Gordon Madison, Asst. Atty. Gen., for appellees.

MERRILL, Justice.

This appeal is from a decree sustaining respondents' demurrers to the bill of complaint, as amended, and dismissing the bill.

Appellant sought a declaratory judgment holding unconstitutional Section 3 of Act 154, Acts of Alabama 1961, Vol. II, p. 2101, known as the Gaither Bill approved September 15, 1961, which provides:

> "At the general election in November 1962, and every two years thereafter until the state is redivided into congressional districts, the representatives in Congress shall be elected at large by the qualified electors of the whole state, provided that every elector who votes in such election must vote for eight and only eight candidates for representatives in Congress."

Ordinarily, where a bill seeking a declaratory judgment shows a bona fide justiciable controversy which should be settled, a demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper on submission for final decree. But where, as here, there is no factual controversy between the parties that can arise and be made available by answer, and only a question of law is presented for decision, and counsel for the parties argue the case on the basis that our decision on the question will settle the controversy and seem desirous that we decide the question, we will proceed to that end. Shew v. City of Gadsden,

265 Ala. 253, 90 So.2d 768, and cases there cited; Evers v. City of Dadeville, 258 Ala. 53, 61 So.2d 78.

A declaratory judgment proceeding is not available to adjudicate anticipatory rights, and it is not sufficient that parties anticipate that a justiciable controversy may arise. Talton v. Dickinson, 261 Ala. 11, 72 So.2d 723.

It is also the law that the declaratory judgment statutes do not empower courts to decide moot questions, abstract propositions, or to give advisory opinions. Birmingham Trust National Bank v. Garth, 263 Ala. 121, 81 So.2d 590. However, since the electorate of Alabama will, in the November, 1962, general election, vote on congressmen at large for the first time since 1912, and due to the public interest, we put aside the question of anticipatory action or advisory opinions, just as we "put to one side any procedural question which might be presented and proceed to a decision on the merits" as we did in Jansen v. State ex rel. Downing, 273 Ala. 166, 137 So.2d 47, where we also considered the constitutionality of this same Act 154.

Appellant argues that the provision in Section 3 of Act 154, requiring a voter to "vote for eight and only eight candidates" violates both Sec. 177 of the Constitution of Alabama and the Fourteenth Amendment to the Constitution of the United States because certain voters must assume the extra burden of writing in names of candidates other than those printed on the ballot.

The constitutionality of this act has already twice been tested and approved in 1962. Prior to the primaries in May, we held the act constitutional as against charges that it violated Sec. 104, Subdiv. (29), and Sec. 190 of the Constitution of 1901; that it violated Amendment 41 (permitting the use of voting machines) and that it was "so incomplete, vague, uncertain and indefinite as to make it inoperative and void."

Jansen v. State ex rel. Downing, Ala., 137 So.2d 47.

In Alsup v. Mayhall, 208 F.Supp. 713, a case decided in the U. S. District Court by a three-judge panel on August 22, 1962, one of the contentions was "that requiring plaintiff and other voters to vote for eight candidates, in order that the vote be valid, is a restraint on the right to a free election" and violates the Fourteenth Amendment to the Federal Constitution. In reply to this contention, the District Court said: "In the election to be held in this State in November 1962, Alsup has a right to vote on the same basis as other electors in the State. The provision that every elector who votes in such election must vote for eight and only eight candidates for representatives in Congress binds every elector in the State." It was held that Act 154 was not unconstitutional, and the "election to be held in the State of Alabama, as proposed by 'Act 154' (Senate Bill 224) is from the State at large and strictly in accord with the requirements of the law."

It is a federal requirement that "if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large." Title 2 U.S.C.A. § 2a (c) (5). See Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795. Since Alabama's representatives were reduced from nine to eight and the number of districts remained at nine, it was necessary that the representatives run at large.

Since 1907, our Codes have prescribed the makeup of ballots and how they shall be printed. In the 1907, 1923 and 1940 Codes, an illustration of a ballot for independent candidates is printed, showing, among other things, certain races where the voter is instructed to vote for one, other races where he votes for two, and one race where he votes for eleven. Tit. 17, § 155, Code 1940. And Tit. 17, § 154, provides in part:

"* * * On the right of each ballot shall be a column in which shall be printed only the titles of the office

for which candidates may be voted for by the electors at the polling places for which the ballot is printed. Said column is designated as 'blank column' and in such column the voting spaces shall be omitted, but in all other respects such blank column shall be a duplicate of the political party columns upon such ballot."

Our statutes permit a voter in a general election to vote for the party nominees, or himself, or anyone he cares to write in, or not vote at all. This applies equally to all voters all over the State.

The fact that appellee may have to write in names of other persons because those printed on the ballot as nominees of three different political parties do not please him is in no sense an unjust discrimination and does not violate Section 177 of the Constitution of 1901 or the Fourteenth Amendment to the Constitution of the United States. Sec. 190 of our State Constitution authorizes the Legislature to pass laws "to regulate and govern elections" including "the manner of holding elections," and Act 154 is not inconsistent with that authority.

In his bill, appellant names four Democratic candidates for Representative for whom he does not wish to vote. He evidently wishes to vote for the three Republican nominees. He objects to having to write in a name to make a total of eight. To show the fallacy of his argument, and the great damage accruing to the State of Alabama if his plan had validity, we merely pose this situation. Just suppose that every voter in Alabama did as appellant apparently desires—to vote for the three Republican candidates and four Democratic candidates, and was not required to vote for an eighth candidate. The result would be that Alabama's representation would only be seven instead of the eight to which the State is entitled. Such a result is untenable when we have a general election to select eight Representatives to represent Alabama in the National Congress.

The trial court correctly sustained the demurrers and dismissed the bill.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and HARWOOD, JJ., concur.