Jana Howard Carey sued her brother, John R. Howard, Sr., other relatives, and a family-owned limited-liability company in the Madison Circuit Court, seeking a declaratory judgment regarding the validity of an option contract for the sale of land and seeking a sale of certain lands owned by John, Jana, and other members of their family for a division of the proceeds. Jana, Beth Howard Bailey, John Newell Bailey II, and Bo Randall Bailey (hereinafter referred to collectively as "the Carey litigants") appeal from a partial summary judgment in favor of John, John R. Howard, Jr., and Benjamin Jamison Howard (hereinafter referred to collectively as "the Howard litigants") on the declaratory-judgment count.[1] John, John R. Howard, Jr., and Benjamin Jamison Howard have *Page 1133 
filed a cross-appeal, contending that the trial court erred in denying their motion for a partial summary judgment predicated upon their contention that the Carey litigants lacked standing to file the declaratory-judgment action.[2]
 Factual Background and Proceedings Below
Jana Howard Carey, John R. Howard, Sr., Beth Howard Bailey, and Susan Howard Miller are the surviving children of Ernest R. "Bo" Howard and Mary Regna B. Howard ("Mrs. Howard"). Bo Howard died intestate in 1986. Probate of his estate ultimately resulted in a division among his widow and surviving children of substantial properties located in Alabama and Tennessee.[3] After final settlement of Bo Howard's estate on May 11, 1994, Mrs. Howard retained undivided ownership of approximately 58.4% of what shall be referred to hereinafter as the "Alabama property." Her four children received, in equal 10.4% shares, an undivided interest in the remaining 41.6% of the Alabama property.
On October 3, 1994, Mrs. Howard entered into an option agreement with her son, John; that agreement provided that after Mrs. Howard's death John could purchase Mrs. Howard's undivided interest in the Alabama property for $1,200 per acre for a period of 12 months from the date her will was duly admitted to probate. The payment terms provided that John tender to the record owner of the property an unsecured promissory note, payable without interest for a period of 10 years, in 10 equal installments, with the first installment due one year from the date the option was exercised. There was to be no prepayment penalty. The day after Mrs. Howard and John entered into the option agreement, Mrs. Howard, John, and Susan formed Howard Farms, LLC (an Alabama limited-liability company, hereinafter referred to as "the LLC"). Ownership of the LLC was held in 100 "units," with Mrs. Howard owning 98 of those units, and John and Susan each owning 1 unit.
On October 24, 1994, Mrs. Howard executed a deed conveying her interest in the Alabama property to the LLC. This conveyance was expressly subject to the option agreement between Mrs. Howard and John. Mrs. Howard thereafter made periodic transfers of her units in the LLC to her children and grandchildren so that by January 1, 1999, she no longer held any units in the LLC.[4]
Upon completion of Mrs. Howard's transfers, Jana, Beth, and Susan each owned 18.85 units of the LLC; John owned 18.85 units. Mrs. Howard's grandchildren, directly or through trusts established for their benefit, owned the remaining 26.1 units.
On February 23, 2002, pursuant to Rule 27(a), Ala. R. Civ. P., the Howard litigants *Page 1134 
filed a petition for discovery in the Madison Circuit Court. They sought to preserve testimony regarding Mrs. Howard's capacity to execute the option agreement and her will. On May 26, 2004, the Carey litigants filed in the Madison Circuit Court a petition for a declaratory judgment as to the validity of the option agreement and seeking a sale of the Alabama property for a division of the proceeds.
The trial court consolidated the Howard litigants' Rule 27(a) discovery petition and the Carey litigants' petition on June 10, 2004. Both the Howard litigants and the Carey litigants moved for a partial summary judgment on the question of the validity of the option agreement; the Howard litigants also alleged that the Carey litigants did not have standing to maintain their declaratory-judgment action. On October 15, 2004, the trial court heard arguments on their motions. By order entered December 3, 2004, the trial court granted in part the Howard litigants' motion for a partial summary judgment (holding that the option contract was valid and enforceable) and denied in part their motion for a partial summary judgment (holding that the Carey litigants had standing to maintain their claim for declaratory relief). The Carey litigants filed a timely notice of appeal from the order granting the Howard litigants' motion for a partial summary judgment; the Howard litigants filed a timely cross-appeal from the order denying their motion for a partial summary judgment as to the Carey litigants' standing to seek declaratory relief.[5]
The record shows that the Howard litigants raised the standing issue as an affirmative defense in the trial court. The standing issue is properly before this Court on the Howard litigants' cross-appeal.[6]
 II. Standard of Review
Before we can consider the Carey litigants' declaratory-judgment action, we must first decide the standing issue raised by the Howard litigants. The parties agree that this Court's standard of review is de novo. This Court uses the same standard of review as that used by the trial court, and the record will be reviewed in a light most favorable to the Carey litigants as the nonmoving party on the Howard litigants' motion for a summary judgment predicated on the Carey litigants' alleged lack of standing, and all reasonable doubts will be resolved in favor of the nonmoving party. Wilson v.Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v.Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986); andBussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988).
 III Analysis
"[D]eclaratory-judgment actions are designed to set controversies to rest before they lead to repudiation of obligations, invasion of rights, and the commission of wrongs."Harper v. Brown, Stagner, Richardson, Inc.,873 So.2d 220, 224 (Ala. 2003). Although declaratory-judgment actions are designed to be preemptive, "`[t]here must be a bona fide justiciable controversy in order to grant declaratory relief.'"Gulf Beach Hotel, Inc. v. State ex rel. Whetstone,935 So.2d 1177, 1182 (Ala. 2006) (quoting Durham v. CommunityBank of Marshall County, 584 So.2d 834, 835 (Ala. 1991)). An essential *Page 1135 
component of justiciability is whether the plaintiff has standing to sue, Kid's Care, Inc. v. Alabama Dep't of HumanRes., 843 So.2d 164, 166 (Ala. 2002), and standing turns on whether the party has suffered an actual injury and whether that injury is to a legally protected right. Town of Cedar Bluffv. Citizens Caring for Children, 904 So.2d 1253, 1256
(Ala. 2004). Consequently, before we can consider the merits of the Carey litigants' declaratory-judgment action, we must first decide if they have standing to seek declaratory relief. Because we conclude that they do not, we do not address the other issues presented.
Section 6-6-223, Ala.Code. 1975, a part of the Declaratory Judgment Act, provides:
 "Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."
Under the plain language of the statute, therefore, the Carey litigants have standing to seek declaratory relief relating to the option agreement only if they are "interested under" or if their "rights, status, or other legal relations are affected by" the option agreement.
The Carey litigants assert that they satisfy these requirements in two respects. First, they contend that their interests as members of the LLC are adversely affected by the option agreement because, they allege, it allows John to purchase the Alabama property, which is currently held by the LLC, at a price well below its fair market value.[7] Second, the Carey litigants contend that their undivided individual interests in the property, which are not subject to the option agreement, are also adversely affected by the fact that John has the option to purchase a large portion of the remaining undivided property at a discount price. Neither of these grounds, however, is sufficient to confer standing.[8]
Under the provisions of the Alabama Limited Liability Company Act, § 10-12-1 et seq., Ala. Code 1975, "[a]ny estate in real property may be acquired in the name of the limited liability company and title to any estate so acquired shall vest in the limited liability company itself rather than in the members individually." § 10-12-23(a), Ala. Code 1975. As members of the LLC, therefore, the Carey *Page 1136 
litigants have "no interest in specific limited liability company property." § 10-12-23(b), Ala. Code 1975 (emphasis added). As a result, the Carey litigants cannot rely on any potential diminution in the value of the property owned by the LLC to confer standing to them because they seek declaratory relief in their own names and in their individual capacities.
To the extent the injury the Carey litigants allege they will suffer if John is permitted to exercise his option is an actual injury, therefore, it is not to the rights the Carey litigants have as members of the LLC. Instead, it is an injury to the LLC — the owner of the property subject to the option — and any right to bring a declaratory-judgment action with respect to that injury rests with the LLC. As members, the Carey litigants are not proper parties to any proceedings brought by that entity. § 10-12-18, Ala. Code 1975. We note that if for some reason the management of the LLC is reluctant to seek a remedy for this alleged injury and the Carey litigants believe the LLC's rights are adversely affected, they have the right as members to explore the possibility of seeking relief through a derivative action. See § 10-12-25, Ala. Code 1975.
Although we recognize that the provisions of the Declaratory Judgment Act are to be "liberally construed and administered," § 6-6-221, Ala. Code 1975, we cannot construe them so broadly as to find that the Carey litigants have standing to sue for declaratory relief as individuals for an alleged injury to property owned by the LLC, of which they are members. To do so would effectively eviscerate § 10-12-23(a) and (b) and §10-12-18 of the Alabama Limited Liability Company Act. The directory language of § 6-6-221, Ala. Code 1975, does not require such an untenable result.
Because the Carey litigants seek declaratory relief in their individual capacities, their standing to sue hinges on their allegation of individual injury. Although their individual interests in the undivided property are not subject to the option agreement, they contend, nevertheless, that the option agreement adversely affects their interests by allowing John the right to purchase a substantial portion of the undivided property at, what they contend, is "a bargain basement price." The Carey litigants, however, have not explained this claim with particularity. Instead, they simply contend that their rights in their interests in the Alabama property "will be diminished" if the option agreement is allowed to stand. We cannot see how this is the case.
As tenants in common, the Carey litigants' right to possess and use the property is coextensive with that of their cotenants.See Ruffin v. Crowell, 253 Ala. 653, 657, 46 So.2d 218,221 (1950) ("Tenants in common hold by several and distinct title, but by unity of possession."). Nothing in the option agreement diminishes this right, nor could it. The Carey litigants' individual interests in the Alabama property are simply unaffected by the option agreement; thus, they cannot rely on an alleged injury to their interests to challenge the validity of the option agreement through this declaratory-judgment action.
The Carey litigants' reliance on Roberts v. PearceConstruction Co., 624 So.2d 1009 (Ala. 1993), to support their claim that they are adversely affected by the option agreement is misplaced. In Roberts, Pearce Construction Company, a mortgagee that had taken title to a condominium building by a deed in lieu of foreclosure, sought a declaration of how its rights under the deed were affected by a contract between the mortgagor, Madison Square Town-homes ("MST"), and an unrelated creditor, *Page 1137 
R L Excavating, Inc. During the construction of the building, R L had performed excavation work for MST. Because of its financial difficulties, however, MST became unable to pay the full contract price for the work after it was performed. Because MST could not meet its obligation to R 
L with cash, MST agreed to sell a unit in the condominium to R L's president, William Roberts, on the condition that he pay $500 down and agree to pay the full purchase price of the unit after MST paid its debt to R L. MST was never able to pay its debt.
Thereafter, MST executed a deed in lieu of foreclosure to the entire condominium complex to Pearce Construction. Pearce Construction did not assume the MST-R L contract and demanded that Roberts vacate the condominium or pay the purchase price. Roberts refused, and Pearce Construction brought an action seeking a declaration of its rights to the disputed condominium.
Relevant to this case, on appeal Roberts asserted that Pearce Construction lacked standing to bring the declaratory-judgment action with respect to his sales contract with MST because MST had not assigned the sales contract between it and Roberts to Pearce Construction. We concluded that this fact was not dispositive of the standing issue. Because Pearce Construction had given "valuable consideration in exchange for a fee simple title to the premises" and had "declined to assume the debt owed by MST to R L," we held that "[Pearce Construction's] rights to the condominium [were] clearly affected by the Roberts-MST contract." 624 So.2d at 1011. The Roberts-MST contract directly conflicted with the rights asserted by Pearce Construction under its deed to the condominium complex. As a result, "Pearce [Construction had] standing to bring an action to determine its rights to the condominium." Id.
Unlike Pearce Construction in Roberts, the Carey litigants have failed to demonstrate how their membership rights in the LLC or their individual property rights are affected at all by the option agreement. Roberts, therefore, is distinguishable and does not support the Carey litigants' claim that they have standing to seek declaratory relief in this case.[9]
 IV. Conclusion
"When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction,"State v. Property at 2018 Rainbow Drive,740 So.2d 1025, 1028 (Ala. 1999), and "[t]he absence of subject-matter jurisdiction renders void any judgment entered in the action."Moore v. John Hancock Life Ins. Co., 876 So.2d 443, 448
(Ala. 2003). Because the Carey litigants lacked standing to seek declaratory relief in their individual capacities, the trial court's partial summary judgments entered in this action — holding that the Carey litigants had standing and that the option agreement was valid — are void. Those judgments, therefore, must be vacated and these appeals *Page 1138 
dismissed because a void judgment will not support an appeal.See Moore, 876 So.2d at 448.
JUDGMENTS VACATED; APPEALS DISMISSED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The proceedings below involved all of the children and grandchildren of Mary Regna B. Howard, one of the original owners of the real estate at issue in this appeal. As the proceedings progressed, some of those parties requested to be realigned. Additionally, many of the grandchildren were minors at the inception of the litigation, and their interests were held in one or more trusts. Some of those minors reached majority before or during the pendency of these proceedings and were then substituted for their trusts as parties in interest.
[2] The trial court certified the order denying in part the Howard litigants' motion for a summary judgment for interlocutory appeal pursuant to Rule 5, Ala. R.App. P. Thereafter, the Howard litigants did not file a petition for permissive appeal with this Court as required by Rule 5, but rather asserted their claim as a cross-appeal. The certification of the standing question for permissive appeal by the trial court was unnecessary, and the failure to present the issue so certified in a petition for permission to appeal pursuant to Rule 5, Ala. R.App. P., is not fatal to our consideration of the standing issue. The trial court also certified the partial summary judgment for the Carey litigants as final pursuant to Rule 54(b), Ala. R. Civ. P.
[3] The Tennessee property is not involved in this litigation. The Alabama property is farmland and is maintained as a single, undivided unit consisting of more than 1,200 acres.
[4] the Carey litigants contend they did not learn of these transfers until some time after the last of the transfers. Resolution of this disputed issue of fact is not essential to a determination of the issue before us.
[5] The count of the Carey litigants' complaint seeking a sale of the property for a division of the proceeds was not decided by the trial court and is not an issue in this appeal. Similarly, the trial court did not decide any issues presented by the Howard litigants' action seeking prelitigation discovery and preservation of testimony relating to Mrs. Howard's competency, so those matters are not before us in this appeal.
[6] See note 2.
[7] The Howard litigants contend that the Carey litigants did not raise this issue before the trial court; thus, they argue, the Carey litigants cannot rely on it to confer standing in this appeal. Our review of the record indicates that this aspect of the Carey litigants' standing argument, premised on their membership interests in the LLC, was presented to the trial court, at least by inference. Whether the explicit argument was presented, however, is of no consequence. "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." National Organization for Women,Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). It is well settled that "jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu." Nunn v. Baker,518 So.2d 711, 712 (Ala. 1987).
[8] We assume for the purposes of this decision that the Carey litigants' claims are ripe for adjudication. The parties have not argued to the contrary. This Court has repeatedly held that a declaratory-judgment action is not available to adjudicate anticipatory rights. See, e.g., Ex parte Bridges,925 So.2d 189, 192 (Ala. 2005); and White v. Frink,274 Ala. 49, 51, 145 So.2d 435, 436 (1962).
[9] The Carey litigants also rely on Jett v. Zink,362 F.2d 723 (5th Cir.1966), a case that involved convoluted litigation regarding financing and operating certain oil and gas properties in Alabama. A detailed discussion of Jett is unnecessary because it does not support the Carey litigants' standing argument. Relying on Jett, the Carey litigants contend that they have standing to challenge the option agreement because, they say, their rights to the Alabama property are "subject to" John's rights under the option agreement. The Carey litigants' individual ownership interests, however, are clearly not subject to John's rights under the option agreement, and, as noted above, the Carey litigants cannot rely on their membership interests in the LLC to confer standing to seek declaratory relief in their individual capacities.