John A. Moore, J. Ryan Moore, and Barbara Ann Moore appeal from a summary judgment for John Hancock Life Insurance Company ("John Hancock"), in their action against John Hancock and Susan Moore Davis. We vacate the summary judgment and dismiss the appeal.
 I.
John A. Moore and Susan L. Moore married in 1972. They had two children, J. Ryan Moore and Barbara Ann Moore. On April 27, 1999, John and Susan were divorced. Susan has remarried and is now known as Susan Moore Davis.
On April 26, 1984, John created the John A. Moore Family Trust ("the Trust"). The Trust designated Susan as its trustee. By its terms, the Trust was created for the benefit of Susan, as John's wife, and Ryan and Barbara Ann, as John's children. Susan, as the trustee, was given broad rights with respect to any insurance policies forming any part of the trust estate:
 "The Trustee shall be vested with all right, title and interest in and to any policies of insurance forming any part of the trust estate, and is authorized to exercise all options, benefits, rights, and privileges under such policies, including the rights to collect the cash surrender value, to borrow on such policies, to receive any dividends on such policies, distributions of surplus, or other refunds of a similar nature, to collect payments upon the face amount of such policies, payments by way of endowment, and any other proceeds of such policies, and the insurance companies which have issued such policies are empowered to deal with the Trustee as the absolute assignee and owner thereof. The Grantor hereby relinquishes all rights and powers in such policies which are not assignable and will, at the request of the Trustee, execute all other instruments reasonably required to effectuate this relinquishment."
(Emphasis added.) Also, the Trust included a provision addressing the possibility that John and Susan might divorce:
 "Any provision in this entire Trust Agreement to the contrary notwithstanding, the provisions made herein for the benefit of Grantor's wife are being made on the assumption that she and Grantor shall remain husband and wife at all times prior to Grantor's death. In the event Grantor and his wife shall be divorced at any time prior to Grantor's death, then on the date that such divorce shall become final, all rights and benefits of Grantor's wife under the terms of this entire Agreement, both prior and subsequent to Grantor's death, shall cease, terminate and become null and void, including, but not limited to, any special power of appointment which may have been granted to Grantor's wife, exercisable by specific provision in the Will of Grantor's wife, to alter the disposition made by Grantor under the terms hereof of the trust assets among Grantor's lineal descendants. In the event that Grantor and his wife shall be divorced at any time prior to Grantor's death, then upon the date that such divorce decree becomes final, Grantor's wife, if then serving as a Trustee hereunder, shall no longer remain as Trustee, but, on the contrary, shall be required to resign forthwith and to transfer, deliver and pay over all assets included in the trust to the successor Trustee named herein, and the administration of this trust and disposition of assets shall *Page 446 
thereafter be handled in the same manner as herein directed following the death of Grantor's wife."
(Emphasis added.)
In 1987, John Hancock issued a policy of life insurance, designating John as the insured. The policy was issued to Susan, as trustee of the Trust, and, in that same capacity, Susan was designated the owner and sole beneficiary of the policy. The policy provided that "`you' and `your' refer only to the Owner of this policy." Regarding the rights of the owner of the policy, including the right to change the owner or beneficiary, the policy provided, in pertinent part:
 "The Owner, the Contingent Owner (if any) and the Beneficiary will be as shown in the application unless you change them or they are changed by the terms of this provision.
 "You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice. . . .
". . . .
 "While the Insured is alive, you may change the Owner, Contingent Owner and Beneficiary by written notice. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not you or the insured is alive. A change shall be subject to the rights of any assignee of record with us and subject to any payment made or other action taken by us before we acknowledge receipt."
The owner's address on the application for the John Hancock policy was the mailing address of International Oil Company, Inc. ("International Oil"), where John was then employed. International Oil paid the premiums on the John Hancock policy.
As International Oil paid the premiums, the policy began to accumulate a cash value, against which the owner was entitled to obtain policy loans. Beginning in 1990, John, by his own admission, obtained loan proceeds from John Hancock by signing Susan's name to the necessary loan-request forms. John admittedly used the loan proceeds to pay his personal financial obligations, after intercepting the loan checks, which were payable to Susan, as trustee of the Trust.
As previously mentioned, John and Susan were divorced in April 1999. After the divorce, John continued to obtain loan proceeds from the policy for his personal use by signing Susan's name, as trustee, to the necessary loan-request forms.
In March 1999, International Oil stopped paying the premiums on the John Hancock policy. As a result, the policy's cash value began to diminish by virtue of the fact that the cash was being used to pay the premiums. John "decided in early 2000 to cash surrender the John Hancock life insurance policy." Appellants' brief, at 5. However, under the terms of both the Trust and the John Hancock policy, only Susan, acting in her capacities as trustee of the Trust and as owner of the policy, was entitled to surrender the policy for cash. Therefore, according to John, he "intended to obtain the cash surrender form from John Hancock, discuss the cash surrender with [Susan], and determine the best way to proceed with the cash surrender of the policy." Id. Barbara Ann and Ryan were aware of John's plans to obtain the cash-surrender proceeds and to use them to pay his personal financial obligations and living expenses. Neither of the adult children objected to John's plans.
John contacted a John Hancock agent to request the necessary cash-surrender form. John Hancock mailed the form to Susan at International Oil's address. *Page 447 
International Oil, where John was no longer employed, forwarded the form to Susan, who telephoned John to discuss the matter.
John and John Hancock agree that Susan initially agreed to obtain the cash-surrender benefits for John, as both he and their children had requested. However, they also agree that Susan changed her mind, deciding, instead, to surrender the policy for cash for her personal benefit.
On February 14, 2000, Susan, as owner of the policy, signed the cash-surrender form, requesting that John Hancock make its check payable to "Policy/Contract Owner" and that it mail the check to her at a new address. John Hancock received Susan's cash-surrender form on February 16, 2000. On February 18, John Hancock issued its check for the cash-surrender value of the policy. The check was payable to "Susan L. Moore, Trustee," and was mailed to Susan at the new address. Before that payment, John Hancock had not received any request from Susan for a change of the ownership of the policy.
John had attempted to prevent Susan's cash surrender of the policy. On February 15, 2000, a former John Hancock agent, at John's request, had an employee telephone John Hancock to notify it that there was a "dispute" over the ownership of the policy. On February 16, 2000, the former agent faxed copies of the Trust and the divorce judgment to John Hancock.
 II.
On December 6, 2000, John, Ryan, and Barbara Ann filed a complaint against John Hancock and Susan, in which they "sought compensatory and punitive damages against John Hancock and [Susan] for the wrongful cash surrender of [the] life insurance policy insuring the life of John A. Moore and held in trust for J. Ryan Moore and Barbara Ann Moore." Appellants' brief, at 1. As later amended, the complaint stated claims alleging negligence, wantonness, conversion, fraudulent misrepresentation, breach of contract, bad faith, fraudulent suppression, and conspiracy.
On March 16, 2001, John Hancock answered the complaint, denying its material allegations and asserting various affirmative defenses. On June 7, 2002, John Hancock filed a motion for a summary judgment, which, after oral arguments and the submission of briefs, the trial court granted on August 15, 2002. In its order granting John Hancock's motion for a summary judgment, the trial court stated, in part, its conclusion that the "[p]laintiffs lack standing to bring this action against John Hancock."
On September 13, 2002, John, Ryan, and Barbara Ann filed a motion to alter, amend, or vacate the summary judgment in favor of John Hancock. The trial court denied that motion on October 23, 2002. The trial court later made the summary judgment for John Hancock final, pursuant to Ala.R.Civ.P. 54(b), and John, Ryan, and Barbara Ann timely appealed to this Court.
 III.
We review de novo the trial court's summary judgment for John Hancock.
 "We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary-judgment motion:
 "'We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of *Page 448 
material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.'
 "Nationwide Prop. Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2001) (citations omitted)."
American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002).
 IV.
It is clear that John's appeal must be dismissed. John conceded in the trial court that he has no standing to sue John Hancock. "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v. Property at 2018 RainbowDrive, 740 So.2d 1025, 1028 (Ala. 1999). The absence of subject-matter jurisdiction renders void any judgment entered in the action. SumlinConstr. Co., L.L.C. v. Taylor, [Ms. 1010943, October 11, 2002] ___ So.2d ___ (Ala. 2002); Sustainable Forests, L.L.C. v. Alabama Power Co.,805 So.2d 681 (Ala. 2001); Stamps v. Jefferson County Bd. of Educ.,642 So.2d 941 (Ala. 1994); Luken v. BancBoston Mortgage Corp.,580 So.2d 578 (Ala. 1991). A void judgment will not support an appeal.Baldwin County v. Bay Minette, [Ms. 1011840, January 24, 2003] ___ So.2d ___ (Ala. 2003); Kid's Care, Inc. v. Alabama Dep't of Human Resources,843 So.2d 164 (Ala. 2002). Therefore, the summary judgment for John Hancock and against John is vacated, and the appeal is dismissed as to John.
 V.
The trial court concluded that Ryan and Barbara Ann, like John, "lack standing to bring this action against John Hancock." If this Court agrees with that conclusion, the summary judgment for John Hancock must be vacated and the appeal must be dismissed as to Ryan and Barbara Ann, too. We agree.
The requirement that a plaintiff have standing is fundamental.
 "Standing, like jurisdiction, is necessary for any valid legal action. To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit. Eagerton v. Williams, 433 So.2d 436
(Ala. 1983); Brown Mech. Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala. 1983); Bagley v. City of Mobile, 352 So.2d 1115 (Ala. 1977); Boger v. Jones Cotton Co., 234 Ala. 103, 173 So. 495
(1937); Stewart v. White, 128 Ala. 202, 30 So. 526
(1901)."
Doremus v. Business Council of Alabama Workers' CompensationSelf-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996) (emphasis added). Specifically, "[s]tanding . . . turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.'"State v. Property at 2018 Rainbow Drive, 740 So.2d at 1027 (quoting Romerv. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581
(Colo. 1998) (Kourlis, J., dissenting)). Thus, the dispositive issue in this case is whether John Hancock's payment of the cash-surrender value to Susan, as trustee, caused Ryan and Barbara Ann to suffer an injury to a legally protected right.
Ryan and Barbara Ann contend that they have standing "[a]s owners and *Page 449 
beneficiaries of the life insurance policy." Appellants' brief, at 18. This contention is premised upon their assumption that, "as of April 27, 1999, the date of [their parents'] divorce, [Susan] was no longer the Trustee of the Trust, and was no longer the `owner' of the subject life insurance policy." Id. at 15. However, their assumption is fatally flawed in several respects.
The argument that Susan "was no longer the Trustee" is belied by the undisputed facts. Ryan and Barbara Ann contend that the divorce resulted in Susan's "automatic removal as Trustee." Id. at 17. However, the Trust does not provide for any such "automatic removal." Instead, the Trust "required [Susan] to resign." As John Hancock correctly argues, Susan "was never asked to and never resigned as Trustee." John Hancock's brief, at 27. Thus, when John Hancock paid the cash-surrender value to Susan, she was still the trustee.
Ryan and Barbara Ann provide no factual support for their contention that, after the divorce, Susan "was no longer the `owner' of the subject life insurance policy." Also, there is no evidence supporting their claim of standing "[a]s owners . . . of the . . . policy." Indeed, it is undisputed that Susan, as the trustee, was the only owner of the policy from its issuance until its surrender. The policy unambiguously provided that only Susan, as the owner, could "change the Owner . . . by written notice." It is undisputed that, before the cash-surrender payment, John Hancock had not received any request from Susan for a change of the ownership of the policy.
To the extent Ryan and Barbara Ann claim to have standing as "beneficiaries of the life insurance policy," they ignore the undisputed fact that Susan, as trustee, was the only beneficiary of the policy. While the policy provided that Susan, as the owner, could "change the . . . Beneficiary by written notice," it is undisputed that no such change was made.
Ryan and Barbara Ann make no other argument in support of their contention that they have standing to maintain this action against John Hancock. Therefore, we must conclude that they have failed to demonstrate any error in the trial court's conclusion that they lack such standing.
 VI.
Our resolution of the standing issues makes it unnecessary for us to consider the other issues presented by John, Ryan, and Barbara Ann.[1]
For the foregoing reasons, the summary judgment in favor of John Hancock and against John, Ryan, and Barbara Ann is vacated, and this appeal is dismissed.
JUDGMENT VACATED; APPEAL DISMISSED.
HOUSTON, SEE, BROWN, HARWOOD, and STUART, JJ., concur.
LYONS, J., concurs specially.
[1] We have not overlooked their argument that, "[e]ven if this Court finds that [they] lack standing, at a minimum, it should allow a substitution of the [Trust] pursuant to Alabama Rule of Civil Procedure 17(a)." Appellants' brief, at 18. However, see State v. Property at 2018Rainbow Drive, 740 So.2d at 1027 ("There are fundamental differences between the principles of `real party in interest' and `standing.'").