Rel: May 15, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0169

————————————————

**William Parker, Jr., Ramona D. Hall, and the Estate of Roberta W. Parker, deceased**

**v.**

**The Bank of New York Mellon, as Trustee for CWABS, Inc., Asset-Backed Certificates, Series 2005-17, and Select Portfolio Servicing, Inc.**

**Appeal from Shelby Circuit Court
(CV-22-900165)**

WISE, Justice.

William Parker, Jr. ("Parker"), Ramona D. Hall ("Hall"), and the estate of Roberta W. Parker, deceased ("the estate"), appeal from an order the Shelby Circuit Court entered in favor of The Bank of New York

Mellon, as trustee for CWABS, Inc., Asset-Backed Certificates, Series 2005-17 ("BONY"), and Select Portfolio Servicing, Inc. ("SPS"). We reverse the trial court's order and remand this action with instructions that the trial court vacate its order and dismiss the action, without prejudice.

Facts and Procedural History

William Parker, Sr. ("William"), and his wife, Roberta W. Parker ("Roberta"), owned a house in Hoover ("the property"), as joint tenants with rights of survivorship. Parker is the son of William and Roberta. In November 2005, William and Roberta refinanced the property, and Countrywide Home Loans, Inc., was the lender for the loan. William and Roberta executed a mortgage that provided that Mortgage Electronic Registration System, Inc. ("MERS"), "acting solely as a nominee for Lender and Lender's successors and assigns," was the mortgagee under that instrument. William also executed a promissory note in favor of Countrywide. On February 23, 2012, the mortgage was assigned to BONY. Effective July 16, 2017, SPS became the servicer of the loan.

William died on January 23, 2012. After William's death, Parker moved in with Roberta on the property. Roberta died on January 25,

2

2019. Parker asserted that he was Roberta's sole heir and that he became the owner of the property. Subsequently, Parker and Hall married, and Hall moved onto the property with Parker.

Parker continued to pay the loan payments on the property for a period after Roberta's death. SPS sent a notice of default that was addressed to Roberta and that was dated February 24, 2020. That notice stated that the loan secured by the mortgage was in default and that a failure to cure the default by March 28, 2020, might result in the acceleration of the debt and foreclosure. At some point, Parker notified SPS of Roberta's death. SPS subsequently notified Parker that he would need to submit various documents if he wished to become a successor in interest on the loan. At some point, the estate was opened in the Shelby Probate Court, and, on July 2, 2020, the probate court appointed Parker as the personal representative of the estate and issued letters of administration to Parker.

After Parker submitted the required documents, SPS notified Parker that he had been confirmed as a successor in interest on the property. It also notified him that he would not be liable for the debt unless he assumed the loan secured by the mortgage. Although Parker

3

expressed an interest in assuming the loan, that process was not completed. Ultimately, BONY foreclosed on the property, and a foreclosure sale took place on April 13, 2021. BONY, as the highest bidder, purchased the property at the foreclosure sale and received a foreclosure deed for the property. Although BONY subsequently sent a demand for possession and notice to vacate, Parker and Hall remained on the property.

On March 23, 2022, BONY filed an ejectment complaint that named William and Roberta as defendants. It also included fictitiously named defendants. On April 13, 2022, a suggestion of death for William and Roberta was filed. On April 20, 2022, BONY filed an amended complaint in which it added Parker and Hall as defendants.

On July 14, 2022, Parker and Hall filed an answer and a counterclaim against BONY and SPS. On October 3, 2022, Parker and Hall filed a "Motion to Add Party to Counterclaim or in the Alternative Motion to Substitute Party in Counterclaim." Specifically, they sought to either add the estate as a party to the counterclaim or, alternatively, to substitute the estate for Roberta as a party to the action. On October 5, 2022, Parker, Hall, and the estate ("the defendants") filed an amended

4

answer and counterclaim in which they asserted claims of negligence; wantonness; unjust enrichment; wrongful foreclosure; slander of title; breach of contract; fraud; violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq; false light; defamation, libel, and slander; violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq; violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq; unfair and deceptive trade practices; and breach of the covenant of good faith and fair dealing and a claim seeking declaratory relief. However, they later dismissed with prejudice their claims of negligence; wantonness; fraud; violations of the Fair Debt Collection Practices Act; false light; defamation, libel, and slander; violations of the Truth in Lending Act; unfair and deceptive trade practices; and breach of the covenant of good faith and fair dealing. BONY and SPS filed a reply to the amended counterclaim. On October 24, 2022, the trial court entered an order substituting the estate for Roberta.

On August 30, 2023, BONY and SPS filed a motion to require the defendants to deposit monthly payments for the loan, taxes, and insurance on the property into the trial court pending the entry of a final judgment. The defendants filed a response in opposition to that motion.

On September 6, 2024, BONY filed its second amended complaint. In its second amended complaint, BONY reasserted its request for an order granting it possession of the property; "[a]n Order stating that Defendant(s) have forfeited their right of redemption for failing to vacate the property"; "[a]n Order stating BONY may immediately upon the [entry] of judgment against Defendant(s) cause the Clerk of the Circuit Court to issue a Writ of Possession"; and "[a]ny other further and different relief BONY may be entitled to, including attorneys' fees, expenses, and costs of court." However, BONY also added a request for "all mesne profits it is owed due to the Occupants unlawful use and occupation of the property."

On that same date, BONY and SPS filed a motion for a summary judgment. In that motion, they argued that BONY was entitled to a judgment in its favor on its ejectment claim, that BONY was entitled to mesne profits and attorneys' fees, and that BONY and SPS were entitled to a judgment in their favor on all of the defendants' remaining counterclaims against them. The defendants subsequently filed a response in opposition to the motion for a summary judgment.

The trial court subsequently conducted a hearing on the motion to require the defendants to deposit monthly payments for the loan, taxes, and insurance on the property, the motion for a summary judgment, and various other motions that had been filed by the parties. On January 29, 2025, after conducting a hearing, the trial court entered an order in which it stated, in pertinent part:

"2. Counterclaim Defendants' Motion to Require Defendants/Counterclaim Plaintiffs to Deposit Mortgage Payments, Taxes, and Insurance Payments Into Court is GRANTED in its entirety. Counterclaim Plaintiffs are hereby ORDERED to make a monthly payment of $1,546.29 into an account established by the Circuit Clerk of Shelby County, Alabama beginning on February 5, 2025 and continuing thereafter on the fifteenth day of each month until BONY is in full and complete possession of the property .... The Clerk of Court is DIRECTED to establish such account within seven (7) days of the date of this Order.

"3. Counterclaim Defendants' Motion for Summary Judgment is hereby GRANTED in its entirety. BONY is GRANTED immediate possession of the Property and the Court ORDERS that Counterclaim Plaintiffs have forfeited any right of redemption for failing to vacate the Property. BONY may immediately cause the Clerk of the Circuit Court to issue a Writ of Possession for the Property. The Court also GRANTS judgment in Counterclaim Defendants favor and against Counterclaim Plaintiffs on Counterclaim Plaintiffs' remaining Counterclaims for Unjust Enrichment (Count Three), Wrongful Foreclosure (Count Four), Slander of Title (Count Five), Breach of Contract (Count Six), violations of RESPA (Count Twelve), and claim for Declaratory Relief (Count Fifteen)."

(Capitalization in original.)  This appeal followed.

Discussion

While we question whether the trial court's January 29, 2025, order was a final judgment because it did not address BONY's claim for mesne profits, we must first determine whether the trial court had subject-matter jurisdiction over this action, even though the parties have not raised this issue on appeal.  See Murray v. Porter, 389 So. 3d 349, 350 (Ala. 2023) ("[B]ecause subject-matter jurisdiction cannot be waived, it is the duty of this Court to consider the lack of subject-matter jurisdiction ex mero motu.  McElroy v. McElroy, 254 So. 3d 872, 875 (Ala. 2017).").  In this case, BONY filed its original complaint solely against William and Ramona and fictitiously named defendants.  However, at the time the original complaint was filed, William and Ramona were both deceased.

In A.E. v. M.C., 100 So. 3d 587, 595 (Ala. Civ. App. 2012), the Court of Civil Appeals held, in part, that a father's custody action "was void at its inception because the sole named defendant was a deceased person who lacked the capacity to be sued in a custody action."  In reaching this conclusion, the Court of Civil Appeals stated:

"A deceased person lacks the capacity to be sued in an action such as the one initiated by the father, and, therefore, we conclude that the father, in asserting his custody claim in case number DR-10-882, failed to invoke the subject-matter jurisdiction of the trial court. See 67A C.J.S. Parties § 54 (2002) ('The capacity to be sued exists only in persons in being and so, does not exist in the case of persons deceased, and a suit filed against a dead person does not invoke the jurisdiction of the court.' (footnotes omitted)). We adopt the explanation of the superior Court of Connecticut, which stated:

> "'"By its very terms, an action at law implies the existence of legal parties; they may be natural or artificial persons, but they must be entities which the law recognizes as competent." Thompson v. Peck, 320 Pa. 27, 30, 181 A. 597 (1935). Corkin, the person named in the writ as the defendant in this case, was dead at the time of service. No such person existed at that time. The first count of the complaint is thus an action against nobody. Bateman v. Wood, 297 Mass. 483, 485, 9 N.E.2d 375 (1937). "[A] dead person is a nonexistent entity and cannot be a party to a suit. Therefore, proceedings instituted against an individual who is deceased at the time of the filing of suit are a nullity. Such proceedings are void ab initio and do not invoke the jurisdiction of the trial court." Volkmar v. State Farm Mutual Automobile Ins. Co., 104 Ill. App. 3d 149, 151, 60 Ill. Dec. 250, 432 N.E.2d 1149 (1982); accord Richie v. Laususe, 892 S.W.2d 746, 748 (Mo. Ct. App. 1994).'

"Noble v. Corkin, 45 Conn. Supp. 330, 332-33, 717 A.2d 301, 302-03 (1998)."

Id. at 594-95.

Subsequently, in <u>Maclin v. Congo</u>, 106 So. 3d 405 (Ala. Civ. App. 2012), the Court of Civil Appeals addressed a similar situation. In <u>Maclin</u>, Ernest Congo, individually and doing business as Congo Towing, and Justin Congo (referred to collectively as "the Congos") filed a complaint against Ronald Lee Brotherton and various fictitiously named defendants on May 26, 2009. A suggestion of death was filed notifying the trial court that Brotherton had died in May 2008. Subsequently, the Congos filed an amended complaint in which they added Progressive Specialty Insurance Company as a defendant and sought damages under the uninsured-motorist provision of an automobile-insurance policy that had been issued to Ernest and that allegedly covered Justin at the time of the accident. At the Congos' request, the trial court appointed T. Mark Maclin as the administrator ad litem for Brotherton's estate and substituted Maclin as a defendant. After a trial, the jury returned verdicts in favor of the Congos, and the trial court entered a judgment on the jury's verdicts. Maclin appealed the trial court's judgment to the Court of Civil Appeals.

On appeal, Maclin argued that the trial court lacked subject-matter jurisdiction of the claims asserted against him because, he asserted, the

"'appointment of an administrator ad litem by a circuit [court] does not create a legal entity which can be sued.'" 106 So. 3d at 408. The Court of Civil Appeals stated:

> "We do not reach the merits of Maclin's argument, however, because we conclude that the trial court never obtained jurisdiction over the cause of action. The Congos filed their complaint against Brotherton on May 26, 2009. At that time, Brotherton was deceased. Proceedings instituted against an individual who is deceased at the time the action is filed are a nullity and do not invoke the trial court's jurisdiction. A.E. v. M.C., 100 So. 3d 587, 595 (Ala. Civ. App. 2012). The Congos' action against Brotherton was therefore void ab initio. Id. The trial court had no jurisdiction to entertain an amendment of the complaint or any further motions or pleadings; it was required to dismiss the action for lack of subject-matter jurisdiction. See Ex parte Owens, 65 So. 3d 953, 955-56 (Ala. Civ. App. 2010). Because the Congos' complaint failed to invoke the trial court's subject-matter jurisdiction, all subsequent actions by the trial court are void. See A.E. v. M.C., 100 So. 3d at 587 ('"The absence of subject-matter jurisdiction renders void any judgment entered in the action." Moore v. John Hancock Life Ins. Co., 876 So. 2d 443, 448 (Ala. 2003).'). See also A.E., 100 So. 3d at 587 (Moore, J., concurring in the result)."

Id.

In this case, William and Ramona, the only named defendants in the original complaint, were both deceased at the time BONY filed that

11

complaint.[1]  Therefore, BONY's action was void <u>ab initio</u>.  Accordingly, the trial court did not have jurisdiction to entertain any amendments to the complaint, to substitute the estate for Roberta, or to entertain any further motions or pleadings.  <u>See</u> <u>Maclin</u>, supra; <u>cf.</u> <u>Ex parte Board of Trs. of Univ. of Alabama</u>, 411 So. 3d 1228 (Ala. 2024) (holding that a complaint naming only a State institution of higher learning that was entitled to absolute immunity was void <u>ab initio</u>, that the trial court did not obtain jurisdiction over the original complaint, and that the trial court did not have jurisdiction to entertain amendments to the complaint or to allow the plaintiff to later substitute named defendants for fictitiously named defendants in the original complaint).  Rather, the trial court had "'no alternative but to dismiss the action'" for lack of subject-matter jurisdiction.  <u>Gulf Beach Hotel, Inc. v. State ex rel.</u>

---

[1]BONY filed its original complaint on March 23, 2022.  At that time, an estate for Roberta had already been opened in the Shelby Probate Court, and Parker had been appointed as the personal representative of the estate.  Additionally, SPS had confirmed Parker as a successor in interest on the property, SPS had corresponded with Parker about his interest in assuming the loan on the property, and SPS had directed correspondence to Parker at the address for the property.  Had BONY named the estate as a defendant at the time it filed its original complaint, the question whether the trial court had obtained subject-matter jurisdiction over the action would not be an issue in this appeal.

Whetstone, 935 So. 2d 1177, 1182 (Ala. 2006) (quoting State v. Property at 2018 Rainbow Drive, 740 So. 2d 1025, 1029 (Ala. 1999)); see also Maclin, supra. Because "[a] void judgment will not support an appeal," we reverse the trial court's order in favor of BONY and SPS and remand this action with instructions that the trial court vacate its order and dismiss the action, without prejudice.[2] Dalton Drug Co. v. OptumRx, Inc., 424 So. 3d 1254, 1262 (Ala. 2025).

REVERSED AND REMANDED WITH INSTRUCTIONS.

Stewart, C.J., and Sellers, Cook, and Parker, JJ., concur.

---

[2]Based on our disposition of this appeal, we pretermit discussion of the arguments raised by the parties.